UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.

SHANCE O. DALTON,
        Defendant.

Docket No. 06-20019

Urbana, Illinois
April 24, 2007
9:05 a.m.

FILED
MAR 2 7 2008
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

SENTENCING HEARING

BEFORE THE HONORABLE MICHAEL P. McCUSKEY
CHIEF UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S :

For the Plaintiff:    RICHARD N. COX, ESQUIRE
                        Assistant United States Attorney
                        201 South Vine Street
                        Urbana, Illinois  61802
                        (217) 373-5875

For the Defendant:    DONALD PARKINSON, ESQUIRE
                        Maloney, Parkinson & Berns
                        135 West Main Street
                        Urbana, Illinois  61801
                        (217) 384-7111

Court Reporter:       LISA KNIGHT COSIMINI, RMR-CRR
                        Official Court Reporter
                        201 South Vine Street, Suite 344
                        Urbana, Illinois  61802
                        (217) 384-2290

Proceedings recorded by mechanical stenography; transcript
produced by computer.

1    THE COURT:  This is the United States of America

2    versus Shance O. Dalton, Case Number 06-20019.

3    Present in open court is the defendant, Shance O.

4    Dalton, accompanied by his attorney, Donald Parkinson of

5    Urbana, Illinois.

6    Representing the United States of America is

7    Assistant U.S. Attorney Richard N. Cox; Probation Office for

8    the Central District of Illinois, Urbana Division, represented

9    by Donna S. Brown.

10    In this case, the defendant was originally charged

11    with a complaint that charged that on or about January 31,

12    2006, in Champaign County, in the Central District of

13    Illinois, Shance O. Dalton distributed cocaine base, crack.

14    That was converted to a two-count indictment on

15    March 1, 2006.  Count 1 charged that on or about January 19,

16    2006, in Champaign, in the Central District of Illinois,

17    Shance O. Dalton distributed cocaine base, crack.

18    Count 2, which was the original complaint, same

19    date, January 31, 2006, that the defendant in Champaign, in

20    the Central District of Illinois, distributed five or more

21    grams of cocaine base, crack.

22    On June 5, 2006, the United States filed an

23    information and notice regarding prior convictions with the

24    notice given pursuant to 21 United States Code, Section 851,

25    that the defendant, if ultimately convicted, would be

1   sentenced to an increased punishment based on prior felony

2   convictions:  possession of a controlled substance, Champaign

3   County Circuit Court, Case 96-CF-715; possession with intent

4   to deliver a controlled substance, Champaign County Circuit

5   Court, Case 99-CF-31.

6           On October 26, 2006, the defendant appeared before

7   U.S. Magistrate Judge David G. Bernthal for a change of plea

8   hearing.  Pursuant to a written plea agreement, the defendant

9   pled guilty to Count 2 of the indictment, and he agreed to pay

10  a $100 special assessment on the date of sentencing.

11          The government agreed to give him acceptance of

12  responsibility, a reduction of the offense level of two or

13  three levels, whichever is applicable.  Defendant agreed to

14  fully cooperate with the United States Government and relevant

15  law enforcement agencies.

16          The government reserved the right in its sole

17  discretion to motion for a downward departure pursuant to 18

18  United States Code, Section 3553(e) from any mandatory

19  sentence and pursuant to Sentencing Guidelines Section 5K1.1

20  from any applicable advisory sentencing guideline range in

21  return for the defendant's cooperation and assistance.

22          The government agreed in the written plea agreement

23  that it would inform the Court of any cooperation rendered by

24  the defendant and whether they would make a motion for either

25  a deviation from the advisory guidelines or a motion for a

USA v. SHANCE O. DALTON, No. 06-20019

4

1    departure from the mandatory guidelines -- mandatory statutory

2    guidelines.

3            The defendant waived his right to appeal any and

4    all issues related to the plea agreement, conviction, and

5    sentence.  Defendant waived his right to collaterally attack

6    his sentence pursuant to 18 USC Section 2255.  The defendant,

7    in front of Judge Bernthal through the agreement, stated that

8    it was his personal desire to do that to obtain the benefits

9    of the written plea agreement.

10            As part of the plea agreement, the government will

11    move to dismiss the remaining count of the indictment at the

12    time of sentencing.  That would be Count 1, right, Mr. Cox?

13            MR. COX:  Yes, Your Honor.

14            THE COURT:  Now, the defendant pled guilty last

15    week to murder in Champaign County Circuit Court, April 17; is

16    that right, Mr. Parkinson?

17            MR. PARKINSON:  That is correct, Your Honor.

18            THE COURT:  And that I see, Ms. Brown, is a recent

19    amendment to the presentence report so that you have had to

20    add that and revise it as of today's date; is that correct?

21            PROBATION OFFICER BROWN:  That's correct, Your

22    Honor.  And it adds criminal history points, but it doesn't

23    affect the calculation of the guidelines.

24            THE COURT:  So he was sentenced to 20 years

25    imprisonment as a result of the guilty plea on the murder

1    charge in Champaign County last week.

2              But what you're telling me, he was already a

3    criminal history category VI.  So that doesn't raise the

4    criminal history category under the advisory guidelines, and

5    it doesn't change the notice that the government was given for

6    the enhanced sentence; doesn't change that, right?

7              PROBATION OFFICER BROWN:  That's right, Your Honor.

8    He's already considered a career offender without this

9    conviction.

10             THE COURT:  Okay.  Mr. Cox, does that sound right,

11   what we've just said?

12             MR. COX:  Absolutely correct, Your Honor.

13             THE COURT:  Do you agree, Mr. Parkinson?

14             MR. PARKINSON:  Yes, Your Honor.

15             THE COURT:  Okay.  Now, the fact that, Mr.

16   Parkinson, you've gotten this amended presentence report

17   today -- it's only amended as to this matter which you're

18   aware of -- so does it add anything new to the presentence

19   report or any reason that you would want a continuation of the

20   sentencing as a result of this new matter from last week?

21             MR. PARKINSON:  No, Your Honor.

22             THE COURT:  Do you agree with that, Mr. Dalton,

23   that you're not seeking to have your sentencing continued

24   because of that plea last week?

25             DEFENDANT DALTON:  No, sir.

1          THE COURT:  So the fact that you didn't physically

2    get this amendment -- I mean, it was just -- how did you

3    handle it, Ms. Brown?  It just came on my desk today, but how

4    did you handle it with Mr. Cox, Mr. Parkinson, and Mr. Dalton?

5          PROBATION OFFICER BROWN:  Well, Your Honor, I

6    apologized to them also and to you.  I just -- I didn't

7    receive the records from Champaign County.  So I just got it

8    done this morning.  So they just got it this morning also.

9          THE COURT:  Okay.  So, Mr. Cox, does the government

10   seek any continuance because of just receiving this new

11   paragraph today?

12         MR. COX:  No, Your Honor.  We were aware of the

13   information; and Mr. Parkinson, in fact, represented Mr.

14   Dalton in the matter.

15         THE COURT:  Okay.

16         MR. COX:  So he was certainly aware of it as well.

17   This is not new information to us.  It's new to the

18   presentence report, but it doesn't affect --

19         THE COURT:  So it's new paperwork but nothing new

20   to the parties?

21         MR. COX:  That's correct.

22         THE COURT:  And no one's moving for a continuation

23   just because they got an amended report today?

24         MR. COX:  I'm certainly not, Your Honor.

25         THE COURT:  And Mr. Dalton said he wasn't, and --

1   right? -- Mr. Parkinson, you said you're not?

2                MR. PARKINSON:  That's correct, Your Honor.

3                THE COURT:  Okay.  So we will, even though it's,

4   you might say, on the eve of sentencing -- it's a matter that

5   occurred last week -- it's not a matter that in any way

6   changes the advisory sentencing guidelines, nor does it change

7   the statutory scheme in this case.  Mr. Parkinson represented

8   Mr. Dalton.  Mr. Dalton's willing to proceed with sentencing

9   today, as is Mr. Parkinson and Mr. Cox. So we will proceed

10  with sentencing today.

11               That was paragraph 40, and then all that changed

12  after that, Ms. Brown, is the sequential numbering of

13  paragraphs?

14               PROBATION OFFICER BROWN:  There is one other --

15  paragraph 40 was added, and 42 was just revised to add in --

16               THE COURT:  Just to change the points but it

17  doesn't change the advisory guideline criminal history

18  category because it was VI, and that's our highest category,

19  right?

20               PROBATION OFFICER BROWN:  Right.  And the only

21  other thing that I would add is on the pending charges

22  sections, paragraph 48 and 49, it appears that those charges

23  were dismissed pursuant to this plea agreement.

24               THE COURT:  So when he pled guilty to murder and

25  received a 20-year sentence, they dismissed the driving on a

1    revoked license; and they dismissed the charge of possession

2    of a controlled substance, being Ecstacy, in case 05-CF-2176?

3              PROBATION OFFICER BROWN:  Yes, Your Honor.

4              THE COURT:  Does that sound right, Mr. Parkinson;

5    that was part of the agreement?

6              MR. PARKINSON:  That is right, Your Honor.

7              THE COURT:  Okay.  So I appreciate everyone

8    amending the record for clarity.

9              Mr. Cox, you've received the presentence report,

10   first prepared in December, revised in January, now revised

11   today's date; and we've covered that on the record today.

12   Previously, you've indicated you had no objections to the

13   presentence report.  Is that still the same?

14             MR. COX:  It is, Your Honor.

15             THE COURT:  And do you intend to call anyone in

16   aggravation today?

17             MR. COX:  No, sir.

18             THE COURT:  Will the government be making a motion

19   for downward departure?

20             MR. COX:  We will.

21             THE COURT:  Okay.  So we will proceed in that

22   manner, but first we need to handle the unresolved objections.

23             On January 9th, Mr. Parkinson reported to Ms. Brown

24   a number of unresolved objections to the presentence report.

25   She has numbered them.

1          Now, Ms. Brown, unless I'm missing something in my

2    report -- I'm looking at page 21.  You numbered that I; 22,

3    you numbered it II; and on 23, it jumped to IV.  I don't have

4    a III.  Is that just a typo?

5          PROBATION OFFICER BROWN:  I think that is just a

6    typo, Your Honor.

7          THE COURT:  Okay.  So it goes I, II, IV; 24 is V.

8    Page 25 is VI, page -- continuation of that on page 26.  27

9    picks up VII.  Page 28 picks up VIII.  So we have I, II, IV,

10   V, VI, VII, and VIII.  III is just a typo, but there is no

11   III.

12         Mr. Parkinson, you've had a chance to receive and

13   review the presentence report.  Has Ms. Brown accurately

14   stated the unresolved objections that you reported to her?

15         MR. PARKINSON:  Yes, Your Honor.

16         THE COURT:  Does she have any more -- I mean, did

17   you give her any more that she's left out?

18         MR. PARKINSON:  No.

19         THE COURT:  And you've had a chance to talk with

20   Mr. Dalton about the presentence report and indicate to him

21   the objections that you'd filed?

22         MR. PARKINSON:  That's correct, Your Honor.

23         THE COURT:  Did he give you any additional

24   objections that he wanted you to file that you didn't file?

25         MR. PARKINSON:  No, Your Honor.

1       THE COURT: Okay. Mr. Dalton, you've received and

2   reviewed the presentence report with the revisions; is that

3   correct?

4       DEFENDANT DALTON: Yes, sir.

5       THE COURT: You've had a chance to see the

6   objections that Mr. Parkinson's filed on your behalf; is that

7   correct?

8       DEFENDANT DALTON: Yes, sir.

9       THE COURT: Do you join with him in those

10  objections?

11      DEFENDANT DALTON: [Gesturing.]

12      THE COURT: Do you join, agree with him?

13      DEFENDANT DALTON: Yes, sir.

14      THE COURT: Now, do you have any objections

15  additionally that Mr. Parkinson hasn't raised on your behalf?

16      DEFENDANT DALTON: No, sir.

17      THE COURT: Did anybody force you to say that?

18      DEFENDANT DALTON: No, sir.

19      THE COURT: Threaten you in any way?

20      DEFENDANT DALTON: No.

21      THE COURT: Promise you anything to say that you

22  have no additional objections?

23      DEFENDANT DALTON: No, sir.

24      THE COURT: Okay. Now, the Court's had a chance to

25  review the objections that we've just referenced that go from

1    page 21 through page -- through page 29; and in reviewing

2    these objections, the Court agrees with the Probation Office

3    note that a resolution of these objections is not necessary

4    because it would not affect the calculation of the advisory

5    sentencing guidelines, nor would it affect the statutory

6    sentencing in this case.

7         And, therefore, the Court rules on all of the

8    unresolved objections that pursuant to Rule 32(i)(3)(B) of the

9    Federal Rules of Criminal Procedure, the Court determines that

10   a ruling on the unresolved objections isn't necessary -- and

11   I'll do it not in the alternative but both -- one, because the

12   matter will not affect sentencing because I will not consider

13   those matters and, two -- well, and, two, because I'm not

14   going to -- it's not going to affect it because I don't

15   consider it.

16        Under the sentencing guidelines, Mr. Dalton, the

17   Probation Office is required to look through police reports

18   and report certain information that appear on police reports

19   to the Federal Bureau of Prisons.  The first two pages of the

20   presentence report give general information.  Very frankly, I

21   never even look at that second page other than basically your

22   age.  So I rarely ever have even noted that there's gang

23   affiliation put down there.

24        So when somebody raises this objection, it's the

25   first time I ever even look at that paragraph on page 2

1    because I never consider it.  So that's a perfect example of

2    something that you can object to.  It could be correct or

3    incorrect.  It's a reporting that she's required to make, but

4    I don't look at it.  I don't consider it unless it's

5    gang-related.  Now, if you were involved in distributing drugs

6    as a member of the Gangster Disciples in a conspiracy, that

7    might be different, but not in your case.

8                So that's how the Court rules as to number I.

9                The same as to juvenile arrests.  They don't

10   calculate points.  I don't go back and judge somebody based on

11   what they did when they were a juvenile.  I'm more worried

12   about and concerned with adult felony convictions that do

13   calculate in my sentencing.

14               Same with the number IV unresolved objection,

15   curfew violations.  In fact, do people get fined for that, Ms.

16   Brown?  I know you have to put it in, but it says in here no

17   judgment was even entered against him. So even if judgment

18   had been entered, I wouldn't consider that, but I do know you

19   have to put this stuff in.

20               Number V, charges that were dismissed, stricken, or

21   never proved -- again, Ms. Brown's required to put in every

22   arrest, every initial charge.  So she's required to do that.

23   I don't consider the fact that something was dismissed.  It's

24   not for me to try to figure out what goes on in State Court.

25   So that, of course, is not considered.

1    The same thing as to various traffic ordinance
2  violations that are listed in number VI on page 25. It
3  doesn't prejudice the defendant because I don't consider them.
4  It will not affect sentencing.
5    And number VII, same as to dismissed charges.
6  Defendant's right.  They're not convictions, no hearing to
7  determine the validity.  She must report them.  I do not
8  consider them.
9    And then the final one is VIII on page 28, pending
10  charges.  Well, now, I think in what we've said today, Mr.
11  Parkinson, the murder charge he pled guilty to and the other
12  pending charges were dismissed; and they fall into the
13  category, as I said, of charges that no longer are on the
14  docket and I don't care about.  So I don't even think at this
15  point there are any pending charges, are there?
16    MR. PARKINSON:  There are not, Your Honor.
17    THE COURT:  Okay.  So that resolves VIII, also.  I
18  wouldn't consider them, and now the matter is moot.
19    So that takes care of the unresolved objections
20  that were filed by the defendant.  The Court under Rule
21  32(i)(3)(B) will not consider them, and they will not affect
22  sentencing.  Those were the objections that were raised by Mr.
23  Parkinson on behalf of Mr. Dalton.  Mr. Dalton joined.  They
24  now have been resolved, as I've said, by the Court's
25  invocation of Rule 32(i)(3)(B) and its explanation of each of

1    the unresolved objections.

2           As the Court then goes through the presentence

3    report, we have explained the dismissal of two charges, the

4    murder charge, how it's been resolved.  No one's sought any

5    continuance because they've received this on the date of

6    sentencing.  There are no other objections.

7           The Court's reviewed the presentence report in its

8    entirety.  The Court adopts pages 1 through 20, paragraphs 1

9    through 90, as the findings of the Court on today's date.  It

10   does so by a preponderance of the evidence.

11          Based on the presentence investigation report, the

12   defendant has an offense level 34/criminal history category

13   VI.  Under the statute, the Court must impose a sentence of no

14   less than ten years to life; probation is not authorized;

15   supervised release of not less than eight years; community

16   restitution applies; fine range of up to $4 million if the

17   defendant has the ability to pay; a mandatory special

18   assessment of $100 for the one count pled to in the plea

19   agreement.

20          Ms. Brown, are those the correct statutory

21   provisions facing Mr. Dalton today?

22          PROBATION OFFICER BROWN:  Yes, Your Honor.

23          THE COURT:  Do you agree, Mr. Cox?

24          MR. COX:  Yes, Your Honor.

25          THE COURT:  Do you agree, Mr. Parkinson?

1        MR. PARKINSON:  Yes, Your Honor.

2        THE COURT:  With an offense level 34/criminal

3   history category VI, the Court under the advisory guidelines

4   is required to do that, calculate for advice as to what would

5   be a reasonable and sufficient sentence.  The advisory

6   guidelines indicate for a defendant with this offense level

7   and criminal history category VI that the guideline provisions

8   would be 262 to 327 months; probation is not authorized;

9   supervised release of not less than eight years; community

10  restitution applies; fine range of $17,500 to $4 million if he

11  has the ability to pay; mandatory special assessment of $100

12  pursuant to statute, the advisory guidelines, and the written

13  plea agreement.

14        Ms. Brown, has the Court accurately stated the

15  advisory guidelines facing Mr. Dalton today?

16        PROBATION OFFICER BROWN:  Yes, Your Honor.

17        THE COURT:  Do you agree with that, Mr. Cox?

18        MR. COX:  I do, Your Honor.

19        THE COURT:  Do you agree, Mr. Parkinson?

20        MR. PARKINSON:  Yes, Your Honor.

21        THE COURT:  Will the -- Mr. Parkinson, will the

22  defense be calling any witnesses in mitigation?

23        MR. PARKINSON:  The Court has in the file two

24  letters that I think it's read and considered here and

25  mentioned at a prior time appearing in court.  We will be

1    offering that.  Mr. Dalton will want to make a statement to

2    the Court also, but that's all.

3         THE COURT:  Right.  The Court did receive a letter

4    from Linda Dalton, the mother of Shance Dalton.  That was

5    received back on February 1st.  It's docket number 21.

6         We also have a letter from Shance Dalton Jr.

7    received on the same date, made part of the file.

8         Number 19 in the file is Shauna Clayborn,

9    C-l-a-y-b-o-r-n, that letter received January 24.

10        January 23 is Vincent -- I won't try to spell the

11   last -- pronounce the last name; it's A-n-d-u-j-o, Jr.  Wrote

12   a very well written, lengthy, three-page letter which is

13   docketed as number 18.

14        So we do have several letters in the file.  They'll

15   be considered.

16        So, Mr. Dalton, so you know how we'll proceed, Mr.

17   Cox will first get up and, pursuant to the written plea

18   agreement, will tell us the nature, extent, and value of your

19   cooperation, what motions he intends to make for a deviation

20   from the advisory sentencing guidelines or if it's the second

21   motion, the mandatory minimum sentence. And he'll make a

22   recommendation.

23        Mr. Parkinson will then make a recommendation as to

24   sentencing.  You'll have a chance to address the Court, and

25   then the Court will impose the sentence today.  That's how

1    we'll proceed.

2              Mr. Cox, on behalf of the government, you may be

3    heard.

4              MR. COX:  Thank you, Your Honor.  Anyone who thinks

5    that criminal cases in Federal Court are all alike and that

6    it's cookie cutter and we just rotely go through this hasn't

7    been involved in enough sentencings and particularly one like

8    today's sentencing.  I seem to have had the habit recently in

9    front of Your Honor coming before you and saying, "This is a

10   unique case."  And it's odd for me after as long as I've been

11   doing this to seemingly be coming before you and saying that

12   these are strange or unique or certainly different kinds of

13   cases, and this is one of them again.

14             Your Honor, I have essentially two matters to

15   address with you.  One would be the appropriate sentence in

16   terms of the length of time of imprisonment that the

17   government believes is appropriate for Mr. Dalton, and then

18   later the issue is whether or not that shall -- that term of

19   imprisonment should be consecutive or concurrent to the term

20   of imprisonment that was imposed last week in the Champaign

21   County Circuit Court.

22             THE COURT:  And I do want to -- since both of us go

23   back in time when we started practicing law and up until maybe

24   the last decade, a murder sentence in State Court was really a

25   sentence that would be served day for day or basically you

1    could half it.

2            Now, as I understand it, Mr. Dalton -- under state

3    law, 20 years means 20 years.  Is that your understanding?

4            MR. COX:  I have to tell you, Your Honor, I

5    don't -- since I'm just not familiar with State Court

6    procedures and they have so many different sentencing and

7    imprisonment classifications, I just don't know.

8            THE COURT:  Mr. Parkinson, was the 20-year sentence

9    last week, is that one that would be 100 percent?

10           MR. PARKINSON:  I do not believe it will be 100

11   percent because it actually occurred back in 1997.

12           THE COURT:  Okay.

13           MR. PARKINSON:  And I think Department of

14   Corrections looks at it -- they have to give him credit for

15   what the law was at that time.

16           THE COURT:  So it's one where you believe it will

17   be 50 percent?

18           MR. PARKINSON:  That's correct.

19           THE COURT:  Okay.  I, I had not looked at it

20   carefully enough since it just came on my desk to know that he

21   was pleading guilty to a murder that was ten years old.  So

22   that's actually what happened; is that right?

23           MR. PARKINSON:  That's correct.

24           THE COURT:  Okay.  You may continue.

25           MR. COX:  Thank you, Your Honor.

1    And that's actually where I'd like to begin to give

2    you a little bit of background because obviously you're just

3    finding out today about this; and I've obviously been privy to

4    more information, as has Mr. Parkinson and Mr. Dalton.  So if

5    I could just give you a little bit of the background.

6    After Mr. Dalton pleaded guilty and agreed to

7    cooperate, at least as one of the provisions of his plea

8    agreement, one of the things and the most important thing in

9    our eyes and with the law enforcement was information that he

10    said he had about an unsolved murder from 1997 which occurred

11    in Champaign.

12    And, in fact, Detective Dale Rawdin from the

13    Champaign Police Department had been assigned that matter for

14    quite some time; and it essentially was a cold case, not to

15    refer to a television show, but it was one of those ones where

16    periodically you review the evidence and try to see if

17    anything new has come up or reinterview witnesses or whatever

18    in an attempt to solve murder cases because the police

19    department does try to do that to provide some peace to the

20    victim's family as well as to, you know, get those persons who

21    are responsible for the crime.

22    In this particular case, then, as it turned out,

23    Mr. Dalton had information about the murder; and, in fact, the

24    information he had was derived because he was a participant in

25    the murder, which is somewhat unusual in our cases where we

1    actually have someone essentially cooperating against

2    themselves often in -- I mean, in another crime.  And that's

3    what Mr. Dalton did.

4            As it turned out, then, the information is that Mr.

5    Dalton and another individual essentially went to an apartment

6    in Champaign, Illinois, in 1997, to intimidate, for want of a

7    better word, some persons that they believed -- in fact, it

8    turned out to be Chicago gang-bangers, probably some turf

9    battles.  I don't know all the ins and outs, but something

10   along that line.  They went to the apartment.  The other

11   individual that Mr. Dalton was with was armed with a firearm.

12   The intimidation soon turned into a struggle which then turned

13   into Mr. Dalton's accomplice shooting and killing that other

14   individual.

15           So there was a murder from 1997 that was unsolved

16   until Mr. Dalton came forward as part of his cooperation

17   agreement in his federal drug case and provided that

18   information to the Champaign Police Department. And not --

19   this isn't one where it just solved the case in terms of now

20   we know what happened, but that's the end of the matter.  The

21   information that Mr. Dalton provided was not only his own

22   eyewitness testimony, obviously, but information that was able

23   to be corroborated, enabling the Champaign Police Department

24   and the Champaign County State's Attorney's Office to then

25   actually file murder charges against Mr. Dalton and his

1   codefendant. And since -- the codefendant is still pending,

2   but Mr. Dalton has now pleaded guilty to his participation in

3   that murder and has received a sentence of 20 years last week.

4        So in terms of Mr. Dalton's cooperating, what we

5   look at is -- in this case, it's a bit unseemly. I mean, it

6   feels kind of bad to be rewarding somebody for committing a

7   murder, but we're not rewarding him for committing the murder.

8   We're rewarding him for the information he provided for a

9   murder that otherwise would have gone unsolved. And I

10   specifically talked to Detective Rawdin about this because it

11   feels bad, I guess is the best way to put it. It just doesn't

12   seem right.

13        He said, "Look, I would never have solved this

14   murder if Mr. Dalton hadn't come forward with the

15   information." I, I don't particularly like rewarding someone

16   like Mr. Dalton, but that's the nature of our business. Mr.

17   Dalton is the one who was the participant. We couldn't just

18   go out and pick someone else and throw them in as a witness

19   and solve this particular case. It had to come from a

20   participant, and Mr. Dalton was willing to do that.

21        So it led to a successful prosecution. Two people

22   have been charged. One person is pending trial. Mr. Dalton

23   has pleaded guilty and has, in fact, been sentenced.

24        So when the United States Attorney was provided

25   with all of that information, he determined that on our drug

1    offense -- and, again, separate that from the murder because

2    what he was charged with and what he's been convicted of in

3    this Court is the drug offense, and we're trying to determine

4    what the appropriate sentence in the drug offense is.  So I'm

5    trying to factor out the murder except as it pertains to the

6    downward departure because the State Court system -- this

7    isn't one where unless we do something the State is not going

8    to have a vindication or anything of their particular crime.

9    They have a prosecution.  They have a guilty plea in Mr.

10   Dalton's case, and they also have a sentence in Mr. Dalton's

11   case.

12        So when all of this was presented to the United

13   States Attorney, he authorized a 20 percent downward departure

14   for Mr. Dalton.  This is the same departure we'd give for

15   anybody who provided information that led to a successful

16   prosecution, and that's what happened in Mr. Dalton's case.

17        Now, so then -- so the next question then is:

18   Where do we start within that?

19        THE COURT:  So that's your 5K1.1 motion?

20        MR. COX:  That's a 5K1 motion, Your Honor.  We

21   would move for a downward departure from the sentence of 20

22   percent.

23        And now I'm going to make my, --

24        THE COURT:  Okay.

25        MR. COX:  -- tell you where I think you should

1    begin.

2            If you look at Mr. Dalton, he is exactly what

3    Congress defined as a career offender.  He's not quite 30

4    years old; and, yet, he's already got either five or six -- I

5    couldn't quite tell -- felony convictions which includes two

6    prior drug convictions.  He has at least two aggravated

7    batteries.  He's been to the Department of Corrections three

8    times.

9            Title 28, Section 994(h) says that the, that the

10   Sentencing Commission -- Congress instructed the Sentencing

11   Commission that they shall -- shall -- create guidelines which

12   assure that persons who meet the criteria of a career

13   offender, such as Mr. Dalton, receive at or near the maximum

14   possible sentence; and the guidelines that have been

15   translated and created for that then show a sentencing range

16   in Mr. Dalton's case of 262 to 327 months.

17           For a person with Mr. Dalton's history,

18   particularly of violence and also now drug dealing -- this

19   will be his third felony drug conviction -- it didn't seem

20   appropriate to start at the bottom for Mr. Dalton.  So we're

21   going to start at 270 months.  And if you take a 20 percent

22   downward departure, that's 54 more months to reduce his

23   sentence, our recommendation, to 216 months, which translates

24   into 18 years.

25           And so, again, that's starting a little bit above

1    the bottom of the guideline range and rewarding him with a 20

2    percent downward departure for his substantial assistance in

3    the Champaign County murder case. So our recommendation would

4    be a term of imprisonment of 216 months to be followed by

5    eight years of supervised release.

6             THE COURT: Now, do we have a question of

7    consecutive and concurrent?

8             MR. COX: We do, and that's the next thing I'd like

9    to address, Your Honor.

10            I think there are -- and I know Mr. Parkinson will

11   make them for you. There are probably good arguments both

12   ways, but it seems to me that when you're considering whether

13   or not -- when you're looking at the federal drug offense that

14   Mr. Dalton has been charged with and that he committed, our

15   offense was committed eight years after the murder was

16   committed. It has nothing to do with the drug offense.

17            So if you impose a sentence of 18 years on his drug

18   offense and it's concurrent to the murder, he's doing nothing

19   essentially for having committed the drug offense which had

20   nothing to do with the murder conviction, or the murder itself

21   and then the subsequent activity. We have in our drug

22   sentence taken into account his cooperation in that murder

23   matter, and we have appropriately made a recommendation that's

24   less than the guideline range.

25            So it seems to me, Your Honor, to give any teeth to

1    the fact that he committed two separate offenses not connected

2    in any way, shape, or form, our sentence should be imposed

3    consecutively; and the State can do what they want with their

4    murder charge as they've already done, but we're here to

5    sentence him for a drug offense where his, the murder is a

6    part of that because it results in a downward departure motion

7    for Mr. Dalton.

8              And I know Mr. Parkinson will make other arguments,

9    and I guess they can be equally reasonable.  But it just seems

10   to me that there has to be some measure of additional

11   punishment because these are totally separate, totally

12   unconnected crimes and, quite frankly, committed in two

13   separate venues.

14             If you have any questions, Your Honor, I'd be happy

15   to answer them, but those are my recommendations.

16             THE COURT:  Thank you, Mr. Cox.

17             Mr. Parkinson, you may be heard.

18             MR. PARKINSON:  Thank you, Your Honor.

19             Please the Court, Mr. Cox, Mr. Dalton.

20             Mr. Dalton is before you having tried to make

21   amends for things that he's done in error and wrong in his

22   life before.  I think his mother, Linda Dalton, explains some

23   of that in her letter.  Certainly, I note the notation by his

24   son, Shance, there talking about time that he spends with his

25   father and ability to do it.

1    You've got an individual before you that clearly

2    does have an extensive prior criminal record.  I think he's

3    only been to the Department of Corrections two times, not

4    three times as Mr. Cox has suggested, but you can look through

5    the record and determine that for yourself there.  I think

6    that's what my client remembers also in these matters.

7    But you have an individual who's 28 years of age

8    here and has by his own statements here tried to do things to

9    turn around the life that he was involved in, the things that

10    he was doing.  The drugs here in question that you're talking

11    about are his, the five grams, 5.2 grams that he provides to

12    a, actually a former girlfriend that asked him for it is what

13    you're dealing with here.  It was a police informant in the

14    case.

15    And you've got an individual here, as suggested by

16    Mr. Andujo there, who has had not the easiest life of growing

17    up, unfortunately got led astray as a juvenile, as he

18    described there, by other members of the community because of

19    his lack of father figures and others in his life at that

20    time.  He was raised by his grandmother, as pointed out, until

21    her death in January of 2006 and that, as he suggests to you,

22    that part of a sentence should also be towards some mercy and

23    consideration for the individual.

24    He points out that he agrees that Shance has, as he

25    puts it, a dubious past.  He's trying to get that past behind

1    him so that he can start off with a clean slate when he

2    finishes up sentences to be imposed by him.

3          Again, his girlfriend, Ms. Clayborn, talks about

4    his desires to get past this, to do other things, to spend

5    time with his family, with her, with his mother.  His child

6    lives with his mother now at this point and is being raised by

7    her.  As you saw in the report itself, he tries to support the

8    children as he can based upon income and what he has.

9          You have an individual here who took it upon

10   himself, not being the shooter at all but one of the people

11   there when that happened; but, as Mr. Cox suggested, the

12   murder would never have been solved except for him coming

13   forth.  And because of him coming forth, it's been recognized

14   by the government in the cooperation here that the murder's

15   been solved; the other individual's charged, that he's still

16   awaiting trial.  Mr. Dalton might be called to have to testify

17   at that trial later on.  It's not determined where they're at

18   at this point and what that individual will do in these

19   proceedings.

20         In terms of punishment here and the consecutive

21   versus concurrent sentence, I think the Court would not at all

22   do anything unreasonable in its sentence in this case by

23   making it a concurrent sentence.  It's at your discretion

24   here.  You're talking about a substantial period of time.

25   Even the government's suggestion, if you were to agree with

1   that, as to a person's life, together with the period of time

2   in question he will be serving for the murder case here in

3   question that he wouldn't be serving anything except he was

4   trying to get a clear slate, start over here, get these things

5   behind him, still have some time to come out to be able to

6   walk around, move, to do things, to better his life and do

7   something more productive with it here -- the suggestion made

8   by the government doesn't allow him to do any of those things

9   whatsoever.

10          With regard to the two prior drug convictions that

11   he has here, we're not talking about major distributions or

12   anything else in terms of major involvement.  Same thing with

13   aggravated battery.  When you look at them, we're not talking

14   about incidences where people are put in the hospital and

15   there's great bodily harm and other things taking place and

16   occurring.  So I don't think there's really a background

17   showing there's violence by Mr. Dalton based upon any criminal

18   convictions that he has here before you.

19          I'd suggest to you that the sentence is appropriate

20   in this particular case as I've suggested here.  It's

21   reasonable for the instant offender given thought to

22   consideration to him for his individual life here in the

23   matter and the fact he has to serve a period of eight years of

24   supervised release when he gets out of the penitentiary

25   sentence that you're going to be imposing upon him.

1          You've got somebody that came in, accepted

2     responsibility, went above and beyond that to try to clean the

3     slate all the way around, take care of things so that he --

4     when he finishes the sentences here, it's like he can start

5     and do something useful with the rest of his life that he has

6     before him.  But he should have years left to be able to

7     accomplish that in this matter; that it would not be

8     inappropriate in this case at all, I think, with a

9     recommendation by the government to impose here a sentence of

10    20 months in the Department of Corrections for him concurrent

11    with the state sentence in this matter, and that's what we'd

12    ask you to impose.

13          THE COURT:  What was the sentence you recommended?

14          MR. PARKINSON:  20 months -- 200 months, Your

15    Honor.  I'm sorry.  I misstated.  200 months, I apologize.

16          THE COURT:  Okay.

17          MR. PARKINSON:  Mr. Dalton wanted to address you.

18          THE COURT:  Mr. Dalton, if you wish to address the

19    Court, then join Mr. Parkinson at the podium.

20          DEFENDANT DALTON:  First of all, I'd like to

21    apologize to my family and the Court.

22          THE COURT:  Do you have some family members here?

23          DEFENDANT DALTON:  Yeah.

24          THE COURT:  Would you identify them by name.

25          MR. PARKINSON:  Ms. Clayborn is here.

1          His mother was downstairs but didn't have an ID and

2    couldn't get in.

3          THE COURT:  I knew we had some people.  Thank you

4    very much.

5          DEFENDANT DALTON:  And second of all, I want to

6    point that I made the prosecuting police -- they got me tagged

7    as some big-time drug dealer.  I got one delivery in my

8    background.  It's .002 tenths of a gram.  That's like

9    1,000 -- that's like a piece of, a piece of dust.  And other

10   than that, my last drug case is for the same thing, being with

11   the wrong people at the wrong time.  I pled guilty to being

12   around something that wasn't mine; and, I mean, I'm not as bad

13   as they make me seen.

14          I have aggravated battery -- one aggravated

15   battery, the police was choking me in the car; and I kicked

16   them off me so I could breathe.  And, next, a police kicked

17   me, and I kicked him.  I mean, it ain't like I been running

18   around beating up police or something.

19          I mean, I accepted my responsibility and I

20   cooperated.  I mean, I didn't cooperate to get more time.  I

21   didn't have to say anything.  I could have done -- I didn't

22   have to say nothing about this murder thing.  I could have

23   just took my acceptance of responsibility and got my federal

24   time.  I didn't cooperate to get more time.  I cooperated to

25   help myself and, like my attorney said, wipe my slate clean.

1          I mean, I got my GED.  I been in school.  I got

2     some college background.  I got over 60-some credits in

3     college.  I got a degree in construction occupation.  So it's

4     not like I'm a lost cause.  I mean, I'm able to be

5     rehabilitated.  My plans if I ever get out is to finish my

6     construction degrees and go on with my life and raise my kids

7     and be with my girl.  Thank you.

8          THE COURT:  Thank you.

9          Well, the one thing I've noticed in these

10    proceedings and just stated is Mr. Dalton is articulate.  He

11    is bright and, unfortunately, hasn't used that intelligence

12    well over the years.  And as I indicated in sentencing, I

13    would not consider matters dismissed.  I would not consider

14    juvenile record.  But Mr. Dalton starts his adult record very

15    quickly after he turned 18.

16         So he turned 18 in 1996, October 23rd; and in the

17    following year, March 29, 1997, he's charged with aggravated

18    battery, kicking a police officer in the thigh/groin, hard

19    enough to force the officer out of the passenger compartment

20    area of the squad car.  He received two years probation and 62

21    days in jail.

22         It wasn't very long after getting out of jail,

23    August 24, 1997, he's charged with kicking a police officer in

24    the leg while the officer's engaged in his official duties;

25    sent to the Illinois Department of Corrections, two years.  So

1    it doesn't take long for Mr. Dalton to be back in the court

2    system.

3            So for that young man his intelligence apparently

4    wasn't used wisely in his first adult year.

5            At age 20, shortly after he turned age 20,

6    possession with intent to deliver a controlled substance,

7    sentenced to seven years in the Department of Corrections.

8            Age 22, obstruction of justice, driving under the

9    influence.  So he's over in Sangamon County in Springfield,

10    giving false information to a police officer while he's under

11    the influence of alcohol.  A second charge was dismissed but

12    the way it reads here, pled guilty, sentenced to Illinois

13    Department of Corrections.

14            Criminal trespass to real property, entering the

15    Country Brook Apartments, 12 months conditional discharge.

16            And 2003, driving on a revoked license.

17            2004, guilty plea, conditional discharge.

18            Age 25, resisting a peace officer, 12 months

19    conditional discharge, seven days in jail.

20            And then the charges here, distribution of five or

21    more grams of cocaine base, crack.

22            Mr. Dalton uses his intelligence to minimize all of

23    these and tell us that he really is just a small-time

24    criminal.

25            The problem is that the federal system, unlike the

1    state, when you look at this doesn't consider you a small-time

2    criminal at all because Congress has mandated a statute that

3    says somebody with this record where you're at least 18 years

4    old -- the instant offense is a felony at the time you're 18,

5    a crime of violence or controlled substance -- so you have two

6    prior felony convictions, either of a crime of violence or a

7    controlled substance, and that brings you here as a career

8    offender.

9            And as Mr. Cox says, the federal government

10   believes that people with these records should be dealt with

11   in a firm manner.  And that's why your sentence is ten years

12   to life, and that's why Mr. Cox did not make the second

13   motion.  The first motion for 5K1.1 is granted for a deviation

14   from the advisory guidelines.  The advisory guidelines were

15   262 to 327 months and were not affected by last week's murder

16   plea as far as the advisory guidelines. The murder plea comes

17   into the deviation that Mr. Cox made within those advisory

18   guidelines.

19           But looking at your entire record, listening to you

20   basically say, "Judge, I, I haven't done a lot wrong in my

21   life," that's not true.  It is not true.  To minimize these

22   matters, it's not true.  And I don't say that because you pled

23   guilty to murder last week.  I'm not considering that.  I am

24   separating myself from that, as Mr. Cox says.

25           Let's look at this case -- and then he's giving you

1   a downward departure motion.  I believe with your attitude and

2   your demeanor and your failure to understand the significance

3   of your criminal history as an adult that Ms. Brown is right

4   when she tells me that a career offender, repeat drug

5   trafficker, history of resisting arrest, kicking police

6   officers, disregarding the law over and over again and then

7   today telling me, "Well, I'm not really a bad person" -- no,

8   maybe you're not a bad person.  You're an intelligent person

9   who continues to make almost every year of your life bad

10  choices.   And those big bad choices year after year bring --

11  make you a career offender.

12          And I do not find anything in your record or your

13  allocution today that would indicate to me that you understand

14  the significance of your ten years of crime as an adult.  And,

15  therefore, to me, when I look under the statute to your

16  character and history, which I'm required to do under 18 USC

17  Section 3553(a), to determine a sentence that is appropriate

18  and reasonable, I don't see the factors that would cause me to

19  move away from the maximum, which is 327 months, to reflect

20  the seriousness of a continued pattern, a refusal to use your

21  intelligence, to conform to the requirements of the law.

22          And so I believe that a sentence at the maximum of

23  the advisory guideline range is appropriate and reasonable to

24  reflect the seriousness of the offense as a career offender,

25  promote respect for the law, provide just punishment, and to

1    deter you, to tell you now you're in the federal system.

2    You've made the Major Leagues.  You've worked yourself up to

3    that career offender status, and you have to understand that

4    you have to pay, in effect, for a life of crime from the last

5    ten years forward, to protect the public from further crimes.

6            You're a smart man.  Take any opportunity for

7    rehabilitation, any work program, anything to get you out of

8    the cell.  You're far smarter than most people, and that's

9    unfortunate that you continue to use your intelligence to make

10   bad choices.

11           This will ensure consistent, fair, determinate, and

12   proportional sentences to avoid unwarranted disparities.

13   Career criminal offenders are dealt with with very heavy

14   sentences mandated by Congress.  Mr. Cox did not make the

15   second motion under 18 USC 3553(e) to get you around the ten

16   years.  So your minimum is ten up to life.

17           And when you look at that and you look at the last

18   ten years, I believe that the 327 months, the maximum under

19   the advisory guidelines, is appropriate and reasonable,

20   sufficient, and not greater than necessary.  It's not a life

21   sentence.

22           Now, the next factor is I've granted the motion for

23   deviation under 5K1.1.  I believe that the government has made

24   a reasonable calculation of the nature, extent and value of

25   that cooperation of 20 percent.  I apply the 20 percent to the

1    327 months.  That gives me 65 months, meaning that your

2    sentence should be 262 months.

3         I do believe that the murder case is separate and

4    apart from this.  I believe that 262 months, since I've

5    tak-- started at the maximum, is sufficient, appropriate, and

6    reasonable.  I do not believe it is necessary for me then to

7    make it a consecutive sentence; that that sentence as a

8    concurrent sentence starting at the maximum and using the

9    government's downward deviation is appropriate and reasonable.

10   So that is the sentence of this Court in the case -- this

11   case.

12        So pursuant to the Sentencing Reform Act of 1984,

13   it is the judgment of this Court that the defendant, Shance O.

14   Dalton, is hereby committed to the custody of the Federal

15   Bureau of Prisons for a term of 262 months, concurrent with

16   his state conviction in Champaign County Case 07-CF-363.

17        I think that's the right case number, isn't it, Ms.

18   Brown?

19        PROBATION OFFICER BROWN:  I'm sorry, Your Honor.  I

20   didn't hear it.

21        THE COURT:  07-CF-363.

22        MR. COX:  Yes.

23        MR. PARKINSON:  That is correct, Your Honor.

24        THE COURT:  Very good.  I didn't want to put the

25   wrong number down and confuse anybody at the Bureau of Prisons

1    when they look at this.

2              Due to extensive family ties, the Court recommends

3    to the Federal Bureau of Prisons the defendant will be housed

4    in the Midwest for visitation.

5              The Court finds the defendant is an addict and,

6    therefore, recommends to the Federal Bureau of Prisons the

7    defendant receive intensive and comprehensive drug and alcohol

8    rehabilitation while in the Bureau of Prisons.

9              The Court finds the defendant does not have the

10   ability to pay a fine, either immediately or through

11   installment payments.

12             Upon release from imprisonment, the defendant shall

13   be placed on supervised release for a term of eight years.

14             Within 72 hours of release from the Federal Bureau

15   of Prisons, the defendant shall report in person to the

16   Probation Office in the district to which he's released.

17             The Court finds the defendant is subject to the

18   mandatory drug testing provisions of 18 USC Section 3583(d)

19   and orders the defendant to submit to one drug test within 15

20   days after being placed on supervision and two drug tests

21   thereafter as directed by the U.S. Probation Office.

22             In addition, pursuant to 42 USC Section 14135a, the

23   defendant shall cooperate in the collection of DNA as directed

24   by the Probation Office or the Federal Bureau of Prisons.

25             In addition to the standard conditions of

1    supervision, the defendant shall comply with the following

2    special conditions.

3            You shall refrain from any use of alcohol.  You

4    shall not purchase, possess, use, distribute, or administer

5    any controlled substance or any paraphernalia related to any

6    controlled substance except as prescribed by a physician.

7    You shall, at the direction of the Probation Office,

8    participate in a program for substance abuse treatment,

9    including not more than six tests per month to determine

10   whether you've used controlled substances and/or alcohol.  You

11   shall pay for these services as directed by the Probation

12   Office.

13           You shall participate in psychiatric services

14   and/or a program of mental health counseling/treatment to

15   include anger management counseling as directed by the

16   Probation Office.  You shall take any and all prescribed

17   medications as directed by the treatment providers.  You shall

18   pay for these services as directed by the Probation Office.

19           You shall not own, purchase, or possess a firearm,

20   ammunition or other dangerous weapon.

21           It's further ordered that Mr. Dalton will pay a

22   special assessment to the United States in the amount of $100

23   which shall be due and payable immediately.

24           Mr. Cox, pursuant to the plea agreement in this

25   case, are you now moving to dismiss Count 1?

1          MR. COX:  Yes, Your Honor.

2          THE COURT:  Count 1 is dismissed.

3          Anything further from the Probation Office, Ms.

4     Brown?

5          PROBATION OFFICER BROWN:  No, Your Honor.  Thank

6     you.

7          THE COURT:  Anything further from the government?

8          MR. COX:  No, thank you, Your Honor.

9          THE COURT:  Defendant has waived his right to

10     appeal or collaterally attack.  So no appeal rights need be

11     given.

12          Anything further, Mr. Parkinson?

13          MR. PARKINSON:  No, Your Honor.

14          THE COURT:  Mr. Dalton, I hope this is your last

15     brush with the law; you use your intelligence wisely; you make

16     good choices; and you don't return because if you do, you're a

17     career offender, and that would be the rest of your life at

18     that point.  So good luck.

19          That's all for the record.

20               (Hearing adjourned, 10:04 a.m.)

21          _____

                              REPORTER'S CERTIFICATE
22          I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify
       that the foregoing is a correct transcript from the record of
23     proceedings in the above-entitled matter.
            Dated this 11th day of March, 2008.
24
                              s/Lisa Knight Cosimini
25          _____
                              Lisa Knight Cosimini, RMR-CRR
                              Illinois License # 084-002998