1

**E-FILED**
Friday, 18 April, 2008  03:13:08 PM
Clerk, U.S. District Court, ILCD

1                UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF ILLINOIS
2                   URBANA DIVISION

3

UNITED STATES OF AMERICA,    )
4                     )     Docket No. 06-20019
         Plaintiff,   )
5                     )
    vs.            )     Urbana, Illinois
6                     )     OCTOBER 26TH, 2006
SHANCE O. DALTON,       )
7                     )
         Defendant.   )
8

9
               TRANSCRIPT OF PROCEEDINGS
10                   CHANGE OF PLEA
        BEFORE THE HONORABLE DAVID G. BERNTHAL
11           UNITED STATES MAGISTRATE JUDGE

12

13   **A P P E A R A N C E S** :

14

  For the Plaintiff:    MR. RICHARD COX
15                   Assistant U.S. Attorney
                  201 S. Vine Street
16                   Urbana, IL   61802

17

18
  For the Defendant:    MR. DONALD PARKINSON
19                   MALONEY, PARKINSON & BERNS
                  135 W. Main Street
20                   Urbana, IL   61801

21   Court Reporter:       TONI M. JUDD, CSR
                  United States Court Reporter
22                   201 South Vine Street
                  Urbana, Illinois  61802
23                   (217) 373-5835

24

  Proceedings recorded by mechanical stenography; transcript
25   produced by court reporter.

1              THE COURT:  This is the case of United States

2    of America vs. Shance O. Dalton, number 06-20019.  The

3    defendant is present with counsel, Donald Parkinson.  The

4    United States is represented by Assistant United States,

5    Richard Cox.

6              It's my understanding that the matter is

7    before me this morning pursuant to a written consent signed

8    by both parties allowing the magistrate judge, pursuant to

9    local rule, to accept a felony guilty plea and thereafter

10   make a report and recommendation to the district judge.

11             Do the parties agree that this is the posture

12   of the case this morning?

13             MR. COX:  I do, Your Honor.

14             MR. PARKINSON:  I need just a second to let my

15   client read that motion.  We have talked about it and he is

16   agreeing.  He just hasn't seen the actual motion.

17             THE COURT:  Thank you, and I have the executed

18   consent which will be made part of the record.  I am advised

19   that the plea will be a plea of guilty to Count 2 of the

20   indictment, which alleges the offense of distribution of more

21   than five grams of crack.  Is that correct?

22             MR. COX:  It is, Your Honor, and I have just

23   tendered the originally executed plea to the Clerk.

24             THE COURT:  Very well.  Thank you.  Before

25   accepting this guilty plea, Mr. Dalton, there are a number of

1    questions that the court will ask you today to make sure this

2    is a valid plea; so if you do not understand any of the

3    questions or don't hear them, please indicate if you want to

4    stop to talk to Mr. Parkinson, indicate that and we will do

5    so.

6                    It's essential to a valid plea that you

7    understand each question before you answer.  In order to do

8    this, I need to have you placed under oath, so if you will

9    stand and raise your right hand, the Clerk will administer

10   that oath.

11                    SHANCE O. DALTON, DEFENDANT SWORN

12                    EXAMINATION BY THE COURT:

13        Q.    Now, Mr. Dalton, do you understand that having

14   been sworn that your answers to the court's questions will be

15   subject to the penalties of perjury or of making a false

16   statement if you do not answer truthfully?

17        A.    Yes, sir.

18        Q.    How old are you?

19        A.    28, sir.

20        Q.    How far have you gone in school?

21        A.    College, sir, two years. I have an associate

22   degree in general studies.

23        Q.    Thank you.  Are you now or have you recently

24   been under the care of any physician or psychiatrist?

25        A.    No.

1          Q.      And have you ever been hospitalized or treated

2     for narcotics addiction?

3          A.      No.

4          Q.      Physically, how do you feel here today?

5          A.      Pretty healthy.

6          Q.      In the last 24 hours, have you taken any

7     medicine, pills, or narcotic drugs?

8          A.      No.

9          Q.      In the last 24 hours, have you consumed any

10    alcoholic beverage?

11         A.      No.

12         Q.      Do you understand what is happening here

13    today?

14         A.      Yes, sir.

15                 THE COURT:  I will ask both Mr. Parkinson and

16    Mr. Cox, do either of you have any reason to doubt the

17    defendant's competence or capacity to enter a plea of guilty

18    this morning?

19                 MR. PARKINSON:  This is Mr. Parkinson, no,

20    Your Honor.

21                 MR. COX:  I don't either, Your Honor.

22                 THE COURT:  Very well.  The court has had an

23    opportunity to engage in brief dialogue so far with the

24    defendant; and based upon my observations of him and my

25    hearing of his responses and the representations of counsel,

1    I conclude that he is competent to understand these

2    proceedings and enter a knowing plea.

3              Now, Mr. Dalton, have you had a sufficient

4    opportunity to discuss your case with your attorney,

5    Mr. Parkinson, who is here with you this morning?

6         A.    Yes.

7         Q.    And are you satisfied with his representation

8    of you in this case?

9         A.    Yes.

10        Q.    I want to remind you that this case, although

11   not currently set for jury trial, is scheduled for a

12   telephone status on October 30th.  That's next week at 4:30,

13   and the matter will be returned to the trial calendar for

14   jury trial before Chief U.S. District Judge, Michael P.

15   McCuskey, if you do not change your plea to guilty pursuant

16   to this agreement.

17             Under the Constitution and the laws of the

18   United States, you have an absolute right to that trial by

19   jury, and no one, including myself as a judge of this court,

20   your attorney, the government's attorney or any agent of the

21   government can deny you your constitutional right to a jury

22   trial on the charges contained in the indictment.

23             The case will be scheduled for trial and

24   proceed to trial before the district judge, unless you do

25   enter a guilty plea here today.

1                    We are talking about a trial before the court,

2    and twelve men and women in the jury.  They would sit in the

3    jury box.  You and your attorney would participate in the

4    selection of that jury by the district judge.

5                    At the time of your trial and throughout your

6    trial, you would be presumed to be innocent and the

7    government would have the burden of proving your guilt.  They

8    would have to produce competent evidence before the jury that

9    convinced each and every one of the twelve jurors of your

10   guilt beyond a reasonable doubt before you could be found

11   guilty.

12                   On the other hand, you would not have to prove

13   that you were innocent.  Do you understand that?

14        A.     Yes.

15        Q.     And in the course of the trial, witnesses for

16   the government would have to come into court and testify in

17   your presence.  Your attorney could cross examine the

18   witnesses for the government.  He could make objections to

19   evidence being offered by the government.  You could, if you

20   chose to do so, present evidence in your own behalf, although

21   there is certainly no burden or obligation on you to do that.

22   Do you understand that?

23        A.     Yes.

24        Q.     And at the trial, while you would have the

25   right to testify on your own behalf, if you chose to do so,

1    you would also have the right not to testify, and no

2    inference or suggestion of guilt could be drawn from the fact

3    that you did not testify.  Do you understand that?

4         A.    Yes.

5         Q.    Now, these are very important rights, they are

6    guaranteed to you by the Constitution and the laws of the

7    United States.  I want you to understand if you plead guilty

8    and the court accepts your plea, you will be waiving -- when

9    I used the term "waiving," I mean giving up, surrendering

10   those rights, including the right to the trial before the

11   district judge, as well as the other rights that I have just

12   discussed.  There will be no trial.  I will file a report and

13   recommendation concerning your guilty plea and order the

14   preparation of a presentence report for the district judge's

15   use.

16              Thereafter, if the district judge accepts my

17   report and recommendation, then he will sentence you on the

18   basis of this guilty plea, after considering the presentence

19   investigation report.

20              And another thing, if you plead guilty, you

21   must understand that you -- you also have to waive your right

22   not to incriminate yourself, because the court will ask you

23   questions about what you did in order to be satisfied that

24   you are guilty as charged.  So you will have to acknowledge

25   your guilt here in open court.

1                    Now, having discussed your rights with you, do

2     you still wish to plead guilty?

3          A.    Yes.

4          Q.    Mr. Dalton, have you received a copy of the

5     indictment -- this charging instrument?

6          A.    Yes.

7          Q.    Have you discussed with your attorney the

8     charge in that indictment to which you intend to plead

9     guilty?

10          A.    Yes.

11          Q.    Now, according to the plea agreement that was

12    mentioned earlier, I will just use that because it's a nice

13    succinct way to do this.  I want to talk about the elements

14    that the United States will have to prove and the possible

15    penalties for the offense.

16                    I will refer to page 3.  It starts at the very

17    top, the elements of the crime to which you are pleading

18    guilty are:  In order to sustain the charge contained in

19    Count 2, distribution of five or more grams of cocaine base,

20    (crack), the United States must prove the following

21    propositions, and they must do so beyond a reasonable doubt:

22                    First, that you distributed five or more grams

23    of cocaine base, (crack);

24                    And second, that you did so knowingly;

25                    And third, that you knew the substance was a

1   controlled substance.

2              Any question about the elements of the charge

3   that the United States would have to prove to the jury beyond

4   a reasonable doubt?

5        A.    No.

6        Q.    Any question about that?  Now, the penalty for

7   this offense, again, referring now to page 3, paragraph 6,

8   the potential penalties, because you have a prior felony drug

9   conviction, you face the following penalties upon conviction:

10             A mandatory minimum ten years and up to life

11   imprisonment, up to a 4 million dollar fine, at least eight

12   years and up to a life term of supervised release, and a $100

13   mandatory special assessment.

14             Do you have any question about the possible

15   penalties?

16        A.    No.

17        Q.    Very well.  Mr. Dalton, has anyone threatened

18   you or anyone else or forced you in any way to plead guilty?

19        A.    No.

20        Q.    Has anyone, including your own attorney, made

21   any prophecy, promise, or prediction as to what your sentence

22   will be or will not be?

23        A.    No.

24        Q.    Let's turn our attention to the document known

25   as "plea agreement and stipulation of facts."  It was

1    tendered up and I am going to send it right back to you

2    temporarily.  I want you to look at as much of the document

3    as you need.  Specifically, I will be asking you if that

4    signature that purports to be yours at page 14 is in fact

5    yours; and if the signature on the last page of a certain

6    letter attached as an exhibit, that letter dated October

7    23rd, 2006, if those are your signatures.

8              Take the time you need and let me know when

9    you are ready to proceed.

10         A.    Yes, they are my signatureS.

11         Q.    Well, let's make sure you signed something, I

12   take it, but you don't know for sure what I was looking at

13   until I confirm it.  We will be extra cautious here.

14         A.    (Nods head.)

15         Q.    Are those -- or is that your signature on page

16   14?

17         A.    Yes, sir.

18         Q.    And is that your signature again at the end of

19   the letter document that's attached?

20         A.    Yes, sir.

21         Q.    Now, did you read both the plea agreement and

22   stipulation of facts, as well as that letter agreement that's

23   attached.  Did you read those?

24         A.    Yes.

25         Q.    Did you read them before you signed them?

1          A.      Yes.

2          Q.      Did you discuss them with Mr. Parkinson before

3     you signed them?

4          A.      Yes.

5          Q.      Let's go through it in some detail here.   Do

6     you have a copy?

7               MR. PARKINSON:  Yes, Your Honor, we do.

8          Q.      This is done pursuant to Rule 11 of the

9     Federal Rules of Criminal Procedure and it is an agreement

10    between you and your attorney and the United States Attorney

11    for the Central District of Illinois, and it is the only

12    agreement.  That's what paragraph 1 tells me as a reader.

13              And if there were any other agreements, verbal

14    agreements, written agreements, draft agreements ahead of

15    time, they have now been replaced by this agreement and there

16    are no other agreements of any kind, any understandings or

17    promises or conditions between you and the United States

18    Attorney for the Central District of Illinois other than this

19    agreement.  Is that correct?

20         A.      Yes.

21         Q.      And there is a limitation on the scope of the

22    agreement in that it is binding only between you and the

23    United States Attorney for the Central District of Illinois;

24    so it doesn't bind any other United States Attorney from any

25    other district nor does it bind any local or state prosecutor

 1    and they make specific reference it does not bind the Tax

 2    Division of the United States Department of Justice or the

 3    Internal Revenue Service of the United States or the

 4    Department of Treasury.

 5              Do you understand the limitation of scope on

 6    this agreement?

 7         A.    Yes.

 8         Q.    And, it is made pursuant to Federal Rule of

 9    Criminal Procedure 11, sub(C)(1)(b), and if the court does

10    not accept any recommendation from either party that's

11    contemplated by this agreement, the court will not accept

12    those recommendations.  You would not have the right to

13    withdraw your guilty plea.  Do you understand that?

14         A.    Yes.

15         Q.    Now, it indicates, as we have discussed, that

16    you will be pleading guilty to Count 2 of the indictment and

17    at the time of your sentencing the government will move to

18    dismiss Count 1 of that indictment.

19              Count 2 specifically charges you with

20    distribution of five or more grams of cocaine base, (crack),

21    in violation of Title 21, United States Code, Section

22    841(a)(1).  Is that what you intend to do?

23         A.    Yes.

24         Q.    And you anticipate that at the time of your

25    sentencing Count 1 would be dismissed by the United States,

1    correct?

2              A.      Yes.

3              Q.      Now, you're telling us in paragraph 5 that you

4    have read the charge to which you are pleading guilty and you

5    have had it explained to you by your attorney and that you

6    understand the nature and elements of the crime to which you

7    are pleading guilty.  Is that all true?

8              A.      Yes.

9              Q.      I just read those elements. I will be happy to

10   read them again unless you don't need me to.

11             A.      I don't need you to.

12             Q.      You remember them?

13             A.      Yeah.

14             Q.      The next section talks about the possible

15   penalty.  I will read that again unless you don't need me to.

16             A.      I understand.  You don't need to read it.

17             Q.      Now, let's go down to paragraph 7 because we

18   have made a reference there as a part of the possible penalty

19   something called "supervised release" and in paragraph 7 it

20   acknowledges that if you were to violate any of the terms of

21   your supervised release, should you get a term of supervised

22   release, then that supervised release could be revoked and

23   you could be in prison for all or part of the supervised

24   release period without credit for any time previously served.

25   Do you have any question about that?

1          A.      No, sir.

2          Q.      Do you understand that is what could happen if

3     you were to violate any term of your supervised release later

4     on?

5          A.      Yes, sir.

6          Q.      Now, you're making a couple of waivers beyond

7     just the trial waiver, or the trial rights that we have

8     talked about and they start on paragraph 8, page 4.

9                  There are a couple of ways you can challenge a

10    conviction, challenge a sentence.  One is just to directly

11    appeal, and that's talked about in number 8; and another one

12    is called a "collateral attack," which we will get to in

13    paragraph 9.

14                 We will start with paragraph 8 where you tell

15    us federal law, specifically Title 28 of the United States

16    Code, Section 1291, gives you a right to appeal a final

17    decision of the district court; and the other section, Title

18    18, United States Code, Section 3742, gives you a right to

19    appeal the conviction and/or sentence imposed.

20                 That you understand those rights and that you

21    have discussed those rights with your attorney and have then

22    decided to waive or give up those rights of appeal regarding

23    any and all issues relating to the plea agreement and

24    conviction and sentence, including any fine or restitution as

25    long as it's within the maximum provided in the statutes of

1    conviction.

2    Is that true?

3            A.      Yes, sir.

4            Q.      As long as the judge at the time of your

5    sentence stays within the statutory limits, you won't be able

6    to withdraw your guilty plea and you won't be able to appeal.

7    Do you have any question about that?

8            A.      No, sir.

9            Q.      And that waiver also includes the right to

10   appeal the manner in which your sentence, including any fine

11   or restitution was determined and you are doing this in

12   exchange for the concessions that the United States has made

13   in the plea agreement.  Is that correct?

14           A.      Yes, sir.

15           Q.      Now, the other one I referred to is the right

16   to collateral attack, and you have confirmed here an

17   understanding that you have the right to attack your

18   conviction and/or sentence imposed collaterally on the

19   grounds that it was imposed in violation of the Constitution

20   or laws of the United States, that you received ineffective

21   assistance from your attorney, or the court was lacking

22   proper jurisdiction, or that your conviction and/or sentence

23   was otherwise subject to collateral attack, and that such an

24   attack is usually brought through a motion made pursuant to

25   Title 28, United States Code, Section 2255.

1                    It tells me here that you and Mr. Parkinson

2      have reviewed Section 2255 and that you understand your

3      rights under that statute.  And understanding those rights

4      and having discussed it thoroughly with your attorney, you

5      made a decision to voluntarily waive or give up any right to

6      collaterally attack the conviction or sentence, again, as

7      long as it stays within the statutory limits.  Is that

8      correct?

9            A.    Yes.

10           Q.    Now, part of that included the waiver to

11     collaterally attack on the basis of ineffective assistance of

12     counsel.  And this paragraph says your attorney has fully

13     discussed and explained your right to attack the conviction

14     and/or sentence collaterally; and you are specifically

15     acknowledging that the decision to waive the right to

16     challenge any later claim as to ineffectiveness of your

17     counsel that decision was made by you alone, notwithstanding

18     any advice you may or may not have received from your

19     attorney regarding that specific right.  Is that true?

20           A.    Yes.

21           Q.    And regardless of any advice Mr. Parkinson may

22     have given you, in exchange for the concessions made by the

23     United States under their agreement, that you are knowingly

24     and voluntarily waiving your right to collaterally attack

25     your conviction and/or sentence.  Is that your decision?

1              A.      Yes.

2              Q.      Now, the rights waived under this waiver

3      include your right to challenge the amount of any fine or

4      restitution in any collateral attack including but not

5      limited to a motion brought under that Title 28, United

6      States Code, Section 2255.  Do you have any question about

7      that?

8              A.      No, sir.

9              Q.      Now, there is -- there is something that we

10     will refer to periodically here as Sentencing Guidelines.

11     These are advisory Sentencing Guidelines discussed in

12     paragraph 10 where you tell the court that you understand

13     that the court will calculate an offense level and criminal

14     history category for you and for this offense using the

15     United States Sentencing Guidelines, and the court will use

16     those calculations to arrive at an advisory sentencing range

17     under those guidelines.

18                     Do you understand that the court must consider

19     the advisory sentencing guideline range when it does impose

20     sentence, and also shall consider the other factors listed in

21     the statute, Title 18, United States Code, Section 3553(a)

22     when the court determines the specific sentence to be

23     imposed.

24                     And do you understand that although those

25     Sentencing Guidelines are advisory, the court may choose to

1    impose a sentence in accordance with those Sentencing

2    Guidelines.  Do you have any question about the Advisory

3    Sentencing Guidelines?

4         A.     No, sir.

5         Q.     Now, the United States has agreed here, and

6    this is an agreement based on the facts that they currently

7    know, they have agreed that you have clearly demonstrated a

8    recognition and an affirmative acceptance of personal

9    responsibility for your criminal conduct in accordance with

10   Section 3E1.1 of the Sentencing Guidelines.  And, as a result

11   of that, a two-level reduction in the offense level is

12   appropriate.

13            Acceptance of personal responsibility shall

14   include, cooperating fully with the United States Probation

15   Office in the preparation of your presentence report, and not

16   committing any bond violation should you be on pretrial

17   release, including but not limited to, commission of any

18   local, state, or federal offenses.

19            Now, this agreement does not preclude the

20   United States from changing its position on this issue if new

21   evidence to the contrary is discovered, or if you were to

22   later demonstrate a lack of acceptance of personal

23   responsibility for your criminal conduct.

24            Is that what you understand your agreement to

25   be, this reduction under paragraph 11?

1          A.      Yes, sir.

2          Q.      Do you understand that the United States could

3    change its position if they discover some evidence or some

4    information not known to them at this time or that you would

5    later demonstrate a lack of acceptance of personal

6    responsibility.  They could change their mind on that point.

7                  Do you have any doubt about that?

8          A.      No, sir.

9          Q.      Now, the United States has also agreed that if

10   when they calculate the base offense level, if it comes up to

11   be 16 or higher, then you qualify for an additional one point

12   reduction in your offense level pursuant to the Sentencing

13   Guidelines, Section 3E1.1 sub (b)(2) and that's because you

14   timely notified the United States Attorney's Office that you

15   would enter a plea of guilty and that permitted the United

16   States to avoid trial preparation and permitted the court to

17   allocate its resources efficiently.

18                  Do you have any question about that possible

19   reduction of one point depending on your base offense level?

20         A.      No, sir.

21         Q.      Now, in paragraph 13, you're telling us that

22   you have agreed with the United States that the statements

23   that we have just talked about regarding those Sentencing

24   Guidelines and the recommendations are not binding on the

25   court and they relate only to the positions the parties are

1    taking regarding the applicable Advisory Sentencing Guideline

2    range and that's based upon the information which you

3    currently have, but the court will be free to make its own

4    independent determination of the applicable Advisory

5    Sentencing Guideline range and to impose whatever sentence it

6    deems appropriate, of course, always within the limits of the

7    statute.

8              So do you understand that the court -- the

9    court is bound by the statutory limits, but not bound by the

10   agreement regarding the Sentencing Guidelines that we have

11   been talking about?  Do you understand that?

12        A.     Yes, sir.

13        Q.     Do you have any question about that?

14        A.     No, sir.

15        Q.     Sort of a followup to that paragraph 14 tells

16   us that at the time of your sentencing, the court will not be

17   bound by any recommendation made by any party, in fact, will

18   be free to impose whatever sentence it deems appropriate up

19   to the statutory maximum, and you would not be allowed to

20   withdraw your guilty plea because of any objection you might

21   have to the calculation of the Sentencing Guidelines or the

22   court's sentencing findings or rulings, or because you

23   receive a higher sentence than that recommended under the

24   plea agreement.  You couldn't withdraw your guilty plea at

25   that time.  Do you have any question about that?

1          A.      No, sir.

2          Q.      The United States is reserving a right in its

3    sole discretion to make a motion at the time of sentencing

4    for a downward departure from those Advisory Sentencing

5    Guideline range pursuant to those, and they do that pursuant,

6    if they do it at all, it will be done pursuant to United

7    States Sentencing Guideline, Section 5K1.1 and from any

8    mandatory minimum sentence pursuant to Title 18, United

9    States Code, Section 3553(e), if you provide substantial

10   assistance in the investigation or prosecution of other

11   criminal offenses.

12              The extent of any such recommended departure

13   will depend solely upon the United States' evaluation of the

14   nature, extent, and value of your assistance, including your

15   truthfulness.

16              Do you understand they have agreed to make

17   this motion under these conditions?

18         A.      Yes, sir.

19         Q.      Now, your obligations start with paragraph 16,

20   page 8, you are saying that one of the conditions of the

21   agreement is that you will cooperate fully with law

22   enforcement officials pursuant to that letter dated October

23   23rd, 2006, which is attached to the agreement and

24   incorporated.  That's the one I asked you about earlier if

25   that was your signature.  Is that what you have agreed to do?

1          A.      Yes, sir.

2          Q.      And you understand that -- let me rephrase

3      that.  In paragraph 17, you are acknowledging that you have

4      reviewed and you understand the possible application of Title

5      18, United States Code, Section 3553(e), and consistent with

6      Application Note 3 to the United States Sentencing Guidelines

7      Section 5K1.1, that the United States is in the best position

8      to assess the value of your cooperation to the United States

9      and its law enforcement efforts.

10                  In return for receiving the opportunity to

11     cooperate with the government and the opportunity to be

12     considered by the government for a motion and recommendation

13     for a downward departure, pursuant to Section 3553(e), you

14     and your attorney have agreed to limit any argument at the

15     time of your sentencing regarding the extent of that downward

16     departure for substantial assistance to the government to

17     only those grounds that are specifically set forth in Section

18     5K1.1 and its application notes.

19                  Now, that's a lot of sections and numbers

20     there, but the essence of that paragraph is in exchange for

21     the opportunity to cooperate, you would limit your, any

22     argument regarding the downward departure to those grounds

23     that are set forth in that Section 5K1.1, as well as the

24     application notes associated with that.  Do you have any

25     question about that?

1          A.      No, sir.

2          Q.      And is that what you have agreed to?

3          A.      Yes, sir.

4          Q.      Now, in paragraph 18, you state that you

5    understand and agree to pay the mandatory $100 special

6    assessment.  Under Title 18, United States Code, Section

7    3013 at the time of your sentencing, and by delivering either

8    a check or money order payable to the United States District

9    Court; and you understand you will have to do that as a

10   condition of your plea agreement, but that the failure to do

11   so, failure to comply with that would not constitute grounds

12   for you to withdraw your plea of guilty.

13              So if you have to -- according to this, you

14   have to pay the $100 special assessment as a condition of the

15   plea agreement; but if you fail to do it, you could not then

16   withdraw your guilty plea.  Do you understand that?

17         A.      Yes, sir.

18         Q.      Now, the United States has agreed that at the

19   time of your sentencing it will move to dismiss Count 1 of

20   the indictment and it will also fully inform the court of the

21   nature, extent, and value of any cooperation that you have

22   provided.

23              Do you understand that that is what they have

24   agreed to do?

25         A.      Yes, sir.

1          Q.      And that's part of what I would call the

2     benefit of the bargain.   That's part of what you got through

3     the negotiation.   Is that the way you see it?

4          A.      Yes, sir.

5          Q.      The next section is entitled "factual basis."

6     This is a stipulation of facts acknowledging this is what the

7     government's evidence will be.   So I will read that.   And I

8     will ask a couple of follow-up questions.

9               According to paragraph 20, you are to plead

10    guilty because you are in fact guilty of the charge contained

11    in Count 2 of the indictment.   In pleading guilty to that

12    charge, you are stipulating and admitting to the following

13    facts:

14               On January 19th, 2006, a confidential

15    source, referred to as "CS" working under the direction of

16    Champaign Police officers, purchased 2.4 grams of crack from

17    the defendant for $120.

18               On January 31st, 2006, the CS called the

19    defendant and arranged to purchase some more crack.   The

20    defendant told the CS to meet him at a specific location.

21    Prior to the meeting, the officer searched the CS and the

22    CS's vehicle and did not locate any drugs, money or weapons.

23    The officers then gave the CS $200 to make the purchase and

24    to follow the CS to the meeting place which was in the

25    vicinity of the defendant's residence at 203 Brookwood Drive

1      in Champaign.  The defendant arrived at the meeting on foot.

2      The defendant got into the CS's car and they drove to the

3      Brookwood address.

4                      The defendant and the CS went into the

5      residence where the defendant sold the CS $200 worth of

6      crack.

7                      The drugs were subsequently analyzed at the

8      Illinois State Police Crime Lab and determined to be 5.4

9      grams of cocaine base in the form of crack.

10                     Is that what you have agreed to as the facts

11     in the case?

12             A.     Yes, sir.

13             Q.     Now, the next section discusses the effects of

14     any violation of this agreement.  You acknowledge in your

15     agreement that if you were to violate any of the terms of the

16     plea agreement then, in that situation the United States has

17     the option to declare the plea agreement null and void.  They

18     don't have to.  They would just have the option.

19                     And if they exercised that option, they would

20     be, "they," the United States, would be completely released

21     from all of their obligations under the plea agreement and

22     also free to seek to vacate your conviction and sentence and

23     reinstate any previously dismissed charges against you or to

24     seek your resentencing.

25                     If, however, the United States were to

1   exercise this option to declare the plea agreement null and

2   void, you, on the other hand, would not be allowed to

3   withdraw from any previously accepted guilty plea.

4                Do you understand that?

5        A.    Yes, sir.

6        Q.    And that you are agreeing here to waive any

7   and all double jeopardy rights and the applicable statute of

8   limitations should the United States seek to reinstate any

9   charges against you or seek to have you resentenced.

10               This, again, is in the event of a violation of

11  the plea agreement.  Do you understand that?

12       A.    Yes.

13       Q.    And whether or not you have violated the terms

14  of the plea agreement shall be determined by the court.  The

15  United States and some of these provisions has sole

16  discretion to decide this or that.  Here they could suggest

17  to the court that you have violated the agreement, but the

18  decision there is up to the court and the United States would

19  have the burden of proof to establish by a preponderance of

20  the evidence that you violated the terms of your plea

21  agreement.

22               Do you understand that decision, if this even

23  comes up, that decision would be made by the judge?

24       A.    Yes.

25       Q.    Now, certain rights we have already talked

1    about, we may be reiterating but better to do that than omit.

2    You have told us starting in paragraph 23, page 11, that you

3    do understand that by pleading guilty, you are giving up

4    certain rights as follows:

5                    First, the right to persist in your plea of

6    not guilty that you have already made.  If you persist in

7    that plea of not guilty, then you will have the right to a

8    public and speedy trial.  You will have the right to a trial

9    by jury, and that's an absolute right to a jury trial.  The

10   jury would be composed, as I mentioned before, of twelve

11   persons selected at random, and those 12 people would have to

12   agree unanimously before the jury could return a verdict of

13   either guilty or not guilty.  That jury would be instructed

14   that you are presumed innocent and it could not convict you

15   unless after hearing all of the evidence it was persuaded

16   that the United States had met its burden of proving you

17   guilty beyond a reasonable doubt.

18                   And you could also ask for a trial by the

19   judge instead of the trial by jury.

20                   You have the right to the assistance of

21   counsel, the right to be represented by an attorney at every

22   stage of the proceeding; and, as has been done here, since

23   the court has found you unable to afford an attorney, one has

24   been appointed to represent you at no cost.

25                   MR. PARKINSON:  Could I correct that, Your

1    Honor?  That's not true.  I am retained counsel.  I

2    apologize.

3                    THE COURT:  I apologize.  I should have known

4    that.  I apologize.

5                    Nevertheless, I certainly thank you for

6    correcting me.  The right to assistance of counsel, and, as I

7    said, the right to be represented by an attorney at all

8    stages of your case.  And if the court were to find that you

9    could not afford counsel, something would change,

10    Mr. Parkinson would be allowed to withdraw.  If the court

11    found that you were unable to afford an attorney, certainly

12    one would be appointed to represent you at public expense.

13                    Also, at trial, and this is included among

14    the battery of rights that you are waiving by pleading

15    guilty, at trial you would have the right to confront and

16    cross examine adverse witnesses.

17                    The United States would be required to present

18    its witnesses and other evidence against you and you would be

19    able to see and hear those witnesses, and your attorney would

20    be able to cross examine them.

21                    In turn, your attorney could present witnesses

22    and other evidence on your behalf; and, if any of those

23    witnesses refused to appear voluntarily, their attendance

24    could be required through the subpoena power of the court.

25                    There is also the right against compelled

1    self-incrimination.  So at trial you would have the privilege

2    against self-incrimination so that you could decline to

3    testify and no inference of guilt could be drawn from your

4    refusal to testify.  But if you desire to do so, you could

5    testify in your own behalf.

6              You indicate that you understand by pleading

7    guilty you are waiving all of the rights set forth in that

8    paragraph that I just summarized and that your attorney has

9    explained to you those rights, as well as the consequences of

10    the waiver.

11              Do you have any question about any of those

12    rights?

13         A.    No, sir.

14         Q.    Do you understand by pleading guilty, you are

15    giving up those rights?

16         A.    Yes, sir.

17         Q.    I do want to clarify the one that we stopped

18    when the court was corrected, the right to assistance of

19    counsel.  You are not giving up the right to have Mr.

20    Parkinson represent you for the balance of the proceedings.

21    He is not getting up and leaving now.  He wouldn't represent

22    you at trial, because, if you plead guilty, there will be no

23    trial, so that's what that paragraph refers to.  Do you have

24    any question about that?

25         A.    No, sir.

1      Q.      He will still be with you through the rest of

2   the proceedings.   Okay.

3              Mr. Parkinson, the next one has to do with

4   your certification.   Is that your signature?

5              MR. PARKINSON:  Yes, Your Honor.

6              THE COURT:  And, Mr. Dalton, the last

7   paragraph 26 says you have read the plea agreement carefully,

8   you have discussed it fully with your attorney, you

9   understand it, you agree to it, and your agreement is

10  voluntary and of your own free will; and you have decided to

11  plead guilty because you are in fact guilty and you are

12  agreeing that the facts stated in this agreement about your

13  criminal conduct are true, and that no threats, promises, or

14  commitments have been made to you or to anyone else, and no

15  agreements have been reached, expressed or implied to

16  influence you to plead guilty other than those that are

17  stated in the written plea agreement; that you are satisfied

18  with the legal services provided by your attorney, and that

19  when you signed the document you were stating that you agreed

20  with everything in that paragraph, and that further you were

21  accepting and entering into this plea agreement.

22  Is that all true?

23      A.      Yes, sir.

24      Q.      Mr. Cox, that's your signature on behalf of

25  the United States?

1                  MR. COX:  It is, Your Honor.

2                  THE COURT:  And I neglected to ask.  I asked

3     Mr. Dalton on this attachment, Mr. Cox, is that your

4     signature under the -- or above the line upon which your name

5     is typed?

6                  MR. COX:  It is, Your Honor.

7                  THE COURT:  And, Mr. Parkinson, your signature

8     and below and to the right of that?

9                  MR. PARKINSON:  That is correct, Your Honor,

10    and I dated it.

11                 THE COURT:  Thank you.  Mr. Dalton, do you

12    understand that the court is not bound by this agreement.

13    It's a contract between you and only you and the United

14    States Attorney for the Central District of Illinois.  Do you

15    understand that?

16         A.      Yes, sir.

17         Q.      Has anybody made any promise to you other than

18    the negotiated terms of this agreement that has induced you

19    to plead guilty?

20         A.      No, sir.

21         Q.      And do you understand that any recommendation

22    regarding sentence, including recommendation of sentence,

23    whether agreed to by your attorney and the prosecutor, or

24    made independently, is not binding on the district judge; and

25    on the basis of your guilty plea, the district judge could

1    sentence you to the maximum permitted by law?

2         A.    Yes, sir.

3         Q.    And the district judge declines to impose any

4    sentence that's been recommended by either the government or

5    your attorney, or perhaps a joint recommendation, but rather

6    imposes a more severe sentence, you would not be able to

7    withdraw your guilty plea?

8         A.    Yes, sir.

9              THE COURT:  The court finds the plea agreement

10   to be in proper form and directs that it be filed of record.

11             So, Mr. Dalton, let me ask you now, formally,

12   how do you plead to Count 2 of the indictment, which charges

13   that on or about January 31st, 2006, at Champaign, in the

14   Central District of Illinois, you knowingly distributed five

15   or more grams of a mixture and substance containing cocaine

16   base, (crack), a Schedule II controlled substance?

17        A.    Guilty, sir.

18             THE COURT:  Mr. Cox, I can rely upon the plea

19   agreement's stipulation of facts in considering the factual

20   basis.  If you wish to supplement, you certainly may do so.

21             MR. COX:  Your Honor, I would just ask you to

22   rely on what's in the plea agreement.  If you have any

23   questions, of course, I would be happy to answer them.  But I

24   think it's a sufficient factual basis.

25             THE COURT:  Mr. Parkinson, I know we have

1    covered it as part of the plea agreement.  Do you agree that

2    the factual basis set forth starting at page 10 would be the

3    government's evidence in this case?

4                    MR. PARKINSON:  Yes, Your Honor.

5                    THE COURT:  And, Mr. Dalton, I read that to

6    you earlier.  Do you agree with the facts as contained in

7    the factual basis of this plea agreement?

8            A.    Yes, sir.

9                    THE COURT:  Did you do what they described you

10   did in there?

11           A.    Yes, sir.

12                   THE COURT:  It's fairly straightforward.

13   There are two purchases of crack cocaine described.  Did you

14   make those sales to someone we have referred to as a

15   confidential source?

16           A.    Yes, sir.

17           Q.    One was January 19th of this year, and the

18   other January 31st?

19           A.    Yes, sir.

20           Q.    And that took place in Champaign, as described

21   in that document; is that true?

22           A.    Yes, sir.

23           Q.    Now, Mr. Dalton, have you plead guilty because

24   you are in fact guilty?

25           A.    Yes, sir.

1          Q.      And are you doing this of your own free will?

2          A.      Yes.

3                  THE COURT:  The court finds that there is a

4    factual basis for the plea of guilty as to Count 2.

5    Mr. Dalton, since you have here acknowledged that you are in

6    fact guilty as charged in Count 2, you do know you have a

7    right to a trial by jury, and the rights related to that.

8                  You do understand what the maximum possible

9    penalty is, and the court is completely satisfied that you

10   are doing this voluntarily.  I will accept the guilty plea

11   and file a report and recommendation with the district judge

12   recommending the entry of a judgment on that guilty plea.

13                 The presentence investigation report is also

14   ordered; and I would tell you, Mr. Dalton, that it is in your

15   best interest to cooperate with the probation officer in

16   furnishing information for that report, because that report

17   will be very important in the district judge's decision as to

18   what your sentence will be.

19                 You and Mr. Parkinson will have a right and an

20   opportunity to examine that report, to make objections to it,

21   comments on it.  We will set your sentencing for February

22   22nd, 2007, at 2:30 p.m. before the Honorable Michael P.

23   McCuskey, Chief United States District Judge, presiding.

24                 I think that takes care of all matters.

25   Mr. Cox, anything else you want the court to consider or

1     anything that's been overlooked that you have caught?

2                    MR. COX:  No, Your Honor.  Thank you.

3                    THE COURT:  Mr. Parkinson, same question?

4                    MR. PARKINSON:  No, Your Honor.

5                    THE COURT:  Very well.  We will be in recess

6     and we will file the report and recommendation today.

7

8                    COURT REPORTER'S CERTIFICATE

9

10        I, TONI M. JUDD, United States Court Reporter,

11     hereby certify that the foregoing is a true and

12     accurate transcript from the Record of Proceedings in

13     the above-entitled matter.

14
                    Dated this 16th day of April,  2008.
15

16

17                         S/Toni M. Judd

18                    _____

19                     Toni M. Judd, U.S. Court Reporter

20

21

22

23

24

25